**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CARMELITA VAZQUEZ, | |
| Plaintiff, | CIVIL ACTION NO. 3:CV-09-0625 |
| v. | (JUDGE CAPUTO) |
| CAESAR'S PARADISE STREAM RESORT, | |
| Defendant. | |

## MEMORANDUM

Plaintiff Carmelita Vazquez ("Vazquez") commenced this disparate treatment action under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*., against her former employer, Starwood Hotels & Resorts Worldwide, Inc. ("Starwood"), improperly designated as Caesar's Paradise Stream Resort ("Paradise Stream"), alleging that she was terminated from her employment because of her race/national origin. A non-jury trial was held on Vazquez's disparate treatment claim on November 21, 2011. Set forth herein are the Court's factual findings and legal conclusions pursuant to Rule 52 of the Federal Rules of Civil Procedure. Because Vazquez proved her disparate treatment claim by a preponderance of the evidence, judgment will be entered in favor of Vazquez and against Starwood.

### I. Factual Background

Plaintiff Vazquez is of African-American and Hispanic descent. Vazquez was hired by Starwood in 2000 or 2001 to work at Paradise Stream as a housekeeper. Paradise Stream is a couples-only resort located in Mount Pocono, Pennsylvania. Vazquez was employed by Starwood until May 28, 2007.

During the term of her employment, Vazquez was provided with a copy of Starwood's Associate Handbook. Vazquez acknowledged receipt of the Associate Handbook on or

about June 17, 2003. Among other policies and provisions, the Associate Handbook contains a provision governing the appearance of Starwood Associates. The appearance policy states:

> All Starwood Associates are expected to take pride and care in their personal appearance, dress and grooming. This is essential for presenting a professional image at all times.
>
> In this connection, Starwood has established a uniform and professional standard of appearance for all Associates in all Starwood locations. . . .
>
> *Hair should be conservative in style (and in color) and should not fall on the face or obstruct eye to eye contact. Hair may be required to be pulled back or tied back (or in the case of some food and beverage positions, a hair net or hat may be required).* Hats are not permitted unless they are part of an issued uniform. . . .
>
> Associates failing to adhere to proper Starwood standards with respect to appearance are subject to disciplinary action, up to and including termination of employment.

(*Appearance Policy*, Ex. 4 (emphasis added).)

The appearance policy with regard to hair is written generally because it is a judgment call made by individual managers to determine what they deem conservative as opposed to otherwise. Managers at Paradise Stream worked with the human resources department and other managers to determine what standards would be applied to govern the appearance policy.

According to Jackie Manning ("Manning"), the assistant executive housekeeper at Paradise Stream, the appearance policy as applied to hair permits an employee to have individual braids, but cornrows that show the scalp are unacceptable. The perception at Paradise Stream is that a design of cornrows that shows an excessive amount of scalp is not allowed under the appearance policy and is unprofessional. Similarly, while Jenell Butz ("Butz") was a manager in different departments at Paradise Stream, her interpretation of the appearance policy was that if she could see scalp in excess in a row going back, the hairstyle was not conservative. Thus, if there were braids in the hair but the scalp was not

2

visible, that hairstyle was acceptable.

Vazquez was subject to discipline for violations of the appearance policy on several occasions based on the manner with which she wore her hair.  For instance, in 2004, Vazquez was disciplined for wearing her hair in twists that showed the scalp.  Additionally, on June 19, 2006, Vazquez received a disciplinary notice for violation of company procedure because she had braids in her hair.  As a result, Vazquez was sent home and prohibited from returning to work until she spoke with an employee in the human resources department.

On other occasions when Vazquez wore braids in her hair to work she was not disciplined.  On September 27, 2006 and October 3, 2006, Vazquez went to work with braids in her hair and was instructed to wear a hat.  She was, however, permitted to work on both days.  There were also several other occasions where Vazquez was given a hat to wear because her employer needed her to stay and work.

Vazquez was terminated from her employment with Starwood on May 28, 2007. That day, Vazquez arrived for work with braids in her hair.  In the afternoon, Vazquez was instructed by Manning to come to the office with Steve Almquist ("Almquist").  Almquist informed Vazquez that he was going to write her up and send her home because of her hair.  Almquist also stated that Vazquez would have to remove the braids from her hair or she would be terminated.  When Vazquez indicated that she would not remove the braids, she was terminated.  The Notice of Termination of Employment of Carmelita Vazquez indicates that she was discharged for a rule violation. The explanation of termination states: "Carmelita will not take out the braids in her hair." (*Notice of Termination*, Ex. 9.)

Other individuals employed at Paradise Stream wore braids and/or cornrows in their hair during and after Vazquez's employment with Starwood.  Vazquez's daughter, Aesther Vazquez, worked at Paradise Stream for five years, and on both occasions she wore

3

cornrows she was told they had to be taken off. Aesther Vazquez took off the cornrows and put a garbage bag on her hair so her hair would not be loose. She was not sent home from work.

April Goode ("Goode"), a former dining room server at Paradise Stream, was permitted to wear her hair in cornrows or braids throughout the course of her pregnancy without being disciplined. However, on June 29, 2007, one month after Vazquez was terminated from employment, Goode received a disciplinary notice for wearing an inappropriate hairstyle. Goode was sent home and told to return for her next shift with an appropriate hairstyle. The next day, Goode returned to work with an improper hairstyle. She again received a disciplinary notice and was sent home. Goode indicated that on both occasions her hair was in braids. On July 2, 2007, Goode arrived to work wearing a scarf on her head. This was considered casual attire not permitted by the appearance policy. As a result, Goode's employment was terminated.

In 2002, Butz, who at the time was in a non-management position as a dining room server, and another dining room employee wore their hair in cornrows to work. Both Butz and the co-worker are Caucasian. Both employees were counseled about their hairstyles, and they removed the cornrows.

Amanda Weir ("Weir"), a Caucasian employee, was permitted to wear a hairstyle which showed her scalp. Vazquez characterized Weir's hair as being in cornrows. Butz described Weir's hairstyle as a french braid, which is a braid close up against the hair. Manning stated that Weir's hair was in individual braids with a ponytail with her scalp showing. Both Butz and Manning testified that Weir's hairstyle did not violate the appearance policy and that they would not have counseled Weir for that hairstyle.

## II. Procedural History

Vazquez commenced this action *pro se* against Starwood, improperly designated as Paradise Stream, on April 6, 2009. The Complaint asserts a disparate treatment claim for race/national origin discrimination in violation of Title VII.

On January 15, 2010, Starwood filed a motion for summary judgment. Starwood's motion for summary judgment as to the disparate treatment claim was denied. However, insofar as Vazquez attempted to raise a disparate impact claim in opposition to Starwood's motion for summary judgment, the Court found that she had not asserted a disparate impact claim in the Complaint. As a result, she was not permitted to proceed on such a claim after discovery had already closed. Starwood was thus granted summary judgment on the untimely raised disparate impact claim.

Vazquez's disparate treatment claim was presented to the Court at a non-jury trial on November 21, 2011. At the close of Vazquez's case, Starwood moved for judgment pursuant to Rule 52(c) of the Federal Rules of Civil Procedure. Starwood raised three arguments in support of its Rule 52 (c) motion: (1) Vazquez failed to file her Title VII claim within ninety (90) days of receiving the right to sue notice; (2) Vazquez failed to establish a *prima facie* case of discrimination; and (3) Vazquez failed to demonstrate that her race and/or national origin were a determinative factor in her discharge. Starwood's motion regarding the latter two arguments was denied, while the motion with respect to Starwood's timeliness argument was denied without prejudice.

At the close of Starwood's case, it renewed its Rule 52© motion, specifically with regard to the timeliness claim. Starwood's renewed motion was granted because Vazquez failed to establish that the Title VII claim was filed within ninety (90) days of her receipt of the right to sue letter.

Vazquez appealed the determination that she failed to timely file the Complaint.

Finding that Starwood failed to satisfy its burden of proving the affirmative defense of untimeliness, the United States Court of Appeals for the Third Circuit vacated the entry of judgment in favor of Starwood and remanded the action for further proceedings. *See Vazquez v. Caesar's Paradise Stream Resort*, No. 11-4411, 2013 WL 1800035 (3d Cir. Apr. 30, 2013).

After the action was remanded to this Court, Starwood filed a motion to proceed on the November 21, 2011 trial transcript. Starwood's motion was granted. However, because the parties had not previously presented closing arguments on their respective positions, closing arguments were heard on November 25, 2013. Additionally, the parties were directed to file proposed factual findings and legal conclusions. Both parties timely filed their proposed factual findings and legal conclusions. The Court, having now considered the testimony of witnesses and evidence admitted at trial, as well as the submissions of the parties, will analyze the evidence and the law and make Findings of Fact and Conclusions of Law as required by Rule 52 of the Federal Rules of Civil Procedure.

### III. Discussion

**A.   Legal Standard**

Rule 52 of the Federal Rules of Civil Procedure provides, in pertinent part:

(a) **Findings and Conclusions.**

(1) **In General.**  In an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its legal conclusions of law separately. The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court. Judgment must be entered under Rule 58. . . .

Fed. R. Civ. P. 52(a)(1). Pursuant to Rule 52(a), the Court's decision must "be supported by subordinate factual findings." *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009) (citing *O'Neill v. United States*, 411 F.2d 139, 146 (3d Cir. 1969)). "This is a mandatory requirement." *In re Frescati Shipping Co.*, 718 F.3d 184, 196 (3d Cir. 2013). While the

Court is not permitted to "view the evidence through a particular lens or draw inferences favorable to either party," *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 272 (3d Cir. 2010) (citing *Ritchie v. United States*, 451 F.3d 1019, 1023 (9th Cir. 2006); *Giant Eagle, Inc. v. Fed. Ins. Co.*, 884 F. Supp. 979, 982 (W.D. Pa. 1995)), the Court should "make determinations of witness credibility where appropriate." *Clark Bldg.*, 618 F.3d at 273 (citing *Parker v. Long Beach Mortg. Co.*, 534 F. Supp. 2d 528, 535 (E.D. Pa. 2008); *Falter v. Veterans Admin.*, 632 F. Supp. 196, 200 (D.N.J. 1986)).

## B. Vazquez's Disparate Treatment Claim

### 1. Liability

Under Title VII, "it shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

Title VII disparate treatment claims can be proven by either direct or indirect evidence. *Pollock v. American Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). Because Vazquez offers only indirect evidence of race/national origin discrimination, her claim must proceed through the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Under the *McDonnell Douglas* burden-shifting procedure:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a *prima facie* case of discrimination. Second, if the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981) (quoting *McDonnell Douglas*, 411 U.S. at 802, 804, 93 S. Ct. 1817).

In order to establish a *prima facie* case of disparate treatment under Title VII, Vazquez must show that (1) she belongs to a protected class, (2) she was qualified for the position she sought to retain or attain, (3) she was subjected to an adverse employment action, and (4) the action occurred under circumstances giving rise to an inference that the adverse action was taken on account of her membership in the protected class. *See Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008); *see also Texas Dep't of Cmty. Affairs v. Burdline*, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981).

The fourth prong, inference of unlawful discrimination, can be established by showing that the employer treated a similarly-situated employee who is not within the plaintiff's protected class differently from the plaintiff. *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410-11 (3d Cir. 1999). To make a comparison of plaintiff's treatment to that of an employee outside plaintiff's protected class for purposes of a Title VII claim, the plaintiff must show that she and the employee are similarly situated in all relevant respects. *See Houston v. Easton Area Sch. Dist.*, 355 F. App'x 651, 654 (3d Cir. 2009) (citations omitted); *Ugorji v. New Jersey Envtl. Infrastructure Trust*, - - - F. App'x - - -, 2013 WL 2996189, at *5 (3d Cir. June 18, 2013) ("Evidence of disparate treatment must show that a comparator was similarly situated to the plaintiff 'in 'all relevant respects.'"). Similarly situated, however, "does not mean identically situated." *Opsatnik v. Norfolk Southern Corp.*, 335 F. App'x 220, 223 (3d Cir. 2009) (quoting *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)). Whether a factor is relevant for purposes of a similarly situated analysis must be determined by the context of each case. *Houston*, 355 F. App'x at 654.

At trial, Vazquez established a *prima facie* case of discrimination. Vazquez is a member of a protected class, she was qualified to retain her position at Paradise Stream, and she suffered adverse employment action. Moreover, Vazquez was terminated under circumstances giving rise to the inference that she was terminated because of her

membership in a protected class. That is, as stated by Starwood's managers, the appearance policy permitted employees to wear their hair in braids so long as excessive scalp was not visible, but it prohibited employees from having cornrows that showed an excessive amount of scalp. The testimony at trial, in connection with the Notice of Termination prepared by Starwood, (*Notice of Termination*, Ex. 9), confirm that Vazquez was terminated since she would "not take out the braids in her hair." The Notice does not indicate that an excessive amount of Vazquez's scalp was visible. Because Starwood's appearance policy permitted employees to wear braids and other non-African American/Hispanic employees did not suffer adverse employment action when wearing braids, yet Vazquez was discharged for wearing such a hairstyle, she adequately demonstrated that her termination occurred under circumstances giving rise to an inference of unlawful discrimination.

Because Vazquez established a *prima facie* case of discrimination, Starwood must articulate a legitimate, non-discriminatory reason for its employment decision. The employer's burden at this stage is "relatively light," and the employer is only required to articulate a legitimate reason for the unfavorable employment decision in question. *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). "The employer need not prove that the tendered reason actually motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff." *Id*.

Here, Starwood has identified a non-discriminatory reason for terminating Vazquez. Specifically, Starwood's proffered legitimate reason for Vazquez's termination from employment was based on a violation of a business-related appearance policy with which Vazquez refused to comply.

As Starwood met its burden, "the burden of production rebounds to the plaintiff, who

must now show by a preponderance of the evidence that the employer's explanation is pretextual (thus meeting the plaintiff's burden of persuasion)." *Fuentes*, 32 F.3d at 763. The Third Circuit explained in *Fuentes* that:

> At trial, the plaintiff must convince the factfinder "both that the reason was false, and that discrimination was the real reason." *Hicks*, 509 U.S. at - - - -, 113 S. Ct. at 2752; *see id*. at - - - -, 113 S. Ct. at 2754 ("It is not enough . . . to *dis* believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." (emphasis in original)). The factfinder's rejection of the employer's proffered, legitimate reason permits, but does not compel, a verdict for the plaintiff. *See Hicks*, 509 U.S. at - - - -, 113 S. Ct. at 2749. The test is whether the plaintiff ultimately persuades the factfinder that the employment decision was caused by bias, and for that purpose both the plaintiff's *prima facie* case and the factfinder's rejection of the employer's proffered evidence are circumstantial evidence of unlawful discrimination. *See Hicks*, 509 U.S. at - - - -, 113 S. Ct. at 2749.

*Id*. (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)); *see also Smith v. Borough of Wilkinsburg*, 147 F.3d 272, 278 (3d Cir. 1998). Thus, "[t]o prevail at trial, the plaintiff must prove not that the illegitimate factor was the sole reason for the decision, but that the illegitimate factor was a determinative factor in the adverse employment decision, that is, that but for the protected characteristic, the plaintiff would [not] have been [terminated]." *Fuentes*, 32 F.3d at 764 (citing *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 113 S. Ct. 1701, 123 L. Ed. 2d 338 (1993)).

In view of the testimony and exhibits submitted at trial, the Court finds that Vazquez satisfied her burden and demonstrated that Starwood's explanation for termination was pretextual. According to Starwood, Vazquez was discharged from her employment based on a purported violation of the appearance policy. However, as discussed, the explanation of termination indicates that Vazquez was discharged for wearing braids, and not for having cornrows or revealing an excessive amount of scalp, which, as testified by supervisors and managers at Paradise Stream, was not a violation of the appearance policy. Thus, the Court finds that Starwood's stated reason for terminating Vazquez was based on a violation of the appearance policy is false. Moreover, because other non-African American and

Hispanic employees, such as Amanda Weir, were not counseled, sent home, or discharged for wearing braids in their hair, the Court concludes that Vazquez established by a preponderance of the evidence that discrimination was a determinative factor in Starwood's decision to terminate her employment on May 28, 2007. Starwood is therefore liable on Vazquez's disparate treatment claim under Title VII.

### 2. Damages

Because the Court has found Starwood liable on Vazquez's disparate treatment claim, Vazquez is entitled to damages. Title VII of the Civil Rights Act of 1964 permits courts to grant equitable remedies such as back pay and front pay. *See* 42 U.S.C. § 2000e-5(g). "The purpose of equitable damages under Title VII are to make the plaintiff 'whole for injuries suffered on account of unlawful employment discrimination." *Miller v. Tyco Elec., Ltd.*, No. 10-CV-2479, 2012 WL 5509710, at *3 (M.D. Pa. Nov. 14, 2012) (quoting *Eshelman v. Agere Sys., Inc.*, 554 F.3d 426, 440 (3d Cir. 2009)). An award of "back pay is designed to make victims of unlawful discrimination whole by restoring them to the position they would have been absent the discrimination." *Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 84 (3d Cir. 2009) (*Loeffler v. Frank*, 486 U.S. 549, 558, 108 S. Ct. 1965, 100 L. Ed. 2d 549 (1988)). Back pay is calculated by subtracting the actual wages earned by the plaintiff from the amount he or she would have earned but for the unlawful discrimination. *Miller*, 2012 WL 5509710, at *3 (citing *Gunby v. Pa. Elec. Co.*, 840 F.2d 1108, 1119 (3d Cir. 1988)). "Back pay is not an automatic or mandatory remedy, but 'one which the courts may invoke' at their equitable discretion." *Donlin*, 581 F.3d at 84 (quoting *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 415, 95 S. Ct. 2362, 45 L. Ed. 2d 280 (1975)). Whereas back pay makes a plaintiff whole from the time of discrimination until trial, "courts may award front pay where a victim of employment discrimination will experience a loss of future earnings because she cannot be placed in the position she was unlawfully

denied." *Id*. at 86 (citing *Maxfield v. Sinclair Int'l*, 766 F.2d 788, 795-97 (3d Cir. 1985)). Front pay is an alternative to the traditional equitable relief of reinstatement. *Id*. (citing *Squires v. Bonser*, 54 F.3d 168, 176 (3d Cir. 1995)).

The Civil Rights Act of 1991 expanded the recovery allowed under the 1964 Act to permit recovery of compensatory and punitive damages in cases "against a respondent who engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact) prohibited under section 703, 704, or 717 of the Act [42 U.S.C.A. §§ 2000e-2, 2000e-3, or 2000e-16], and provided that the complaining party cannot recover under section 1981 of this title . . . ." 42 U.S.C. § 1981a(1); *Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311, 316 (3d Cir. 2006). Compensatory damages include "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." 42 U.S.C. § 1981a(b)(3). Section 1981a contains a cap on the maximum amount of compensatory and punitive damages based on the size of the employer/respondent. *Id*. Excluded from the determination of compensatory damages are "backpay, interest on backpay, or any other type of relief authorized under section 706(g) of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000e-5(g)]." *Id*. at § 1981a(b)(2).

Vazquez will not be awarded equitable relief in the form of back pay or front pay. Vazquez had the burden of proving these damages by a preponderance of the evidence. *See Third Circuit Model Jury Instructions*: Civil §§ 5.4.3-5.4.4 (2011). At trial, Vazquez did not submit evidence regarding her wages earned while she worked for Starwood. Accordingly, the Court is unable to determine the wages she would have earned absent the unlawful discrimination. Thus, she has failed to prove her claim for back pay by a preponderance of the evidence. Vazquez similarly failed to submit detailed evidence which

would allow for a calculation of front pay, and, as such, she will not be awarded front pay.[1]

Vazquez will, however, be awarded compensatory damages. As discussed, Vazquez suffered intentional discrimination by Starwood, and she is therefore eligible to recover compensatory damages under § 1981a. Based on the evidence presented at trial, the Court finds that Vazquez established by a preponderance of the evidence that she suffered inconvenience, lost future earnings, and other nonpecuniary losses as a result of intentional discrimination. *See Third Circuit Model Jury Instructions*: Civil § 5.4.1 cmt. (2011) (citing *Williams v. Pharmacia, Inc.*, 137 F.3d 944, 953-54 (7th Cir. 1998) (distinguishing equitable remedy of front pay from the compensatory remedy of lost future earnings and noting that "[w]hereas front pay compensates the plaintiff for the lost earnings from her old job for as long as she may have been expected to hold it, a lost future earnings award compensates the plaintiff for the diminution in expected earnings in all of her future jobs for as long as the reputational or other injury may be expected to affect her prospects.")). In particular, Starwood's unlawful termination of Vazquez damaged her future job prospects, prevented her from obtaining promotions to higher paying positions at Paradise Stream or other Starwood facilities, and caused her inconvenience associated with being unemployed and stigmatized for being terminated based on a purported failure to adhere to an employer policy. As such, the Court finds that Vazquez is entitled to twenty-five thousand dollars ($25,000.00) in compensatory damages.[2]

---

[1] Reinstatement has not been requested and will not be ordered.

[2] Vazquez has not requested punitive damages. And, even if punitive damages were requested, they would not be awarded because the evidence fails to establish that Starwood engaged in a discriminatory practice "with malice or reckless indifference" to Vazquez's federally protected rights. *See* 42 U.S.C. § 1981a(b)(1).

## IV. Conclusion

For the above stated reasons, judgment will be entered in favor of Vazquez and against Starwood, improperly designated as Caesar's Paradise Stream Resort, in the amount of twenty-five thousand dollars ($25,000.00). The Court's Findings of Fact and Conclusions of Law, as required by Federal Rule of Civil Procedure 52, are as follows:

### Findings of Fact

1. Plaintiff Carmelita Vazquez ("Vazquez") is of African-American and Hispanic descent.

2. Vazquez was hired by Defendant Starwood Hotels & Resorts Worldwide, Inc. ("Starwood") as a housekeeper to work at the Caesar's Paradise Stream Resort ("Paradise Stream") in 2000 or 2001. Vazquez was terminated from her employment with Starwood on May 28, 2007.

3. Paradise Stream is a couples-only resort located in Mount Pocono, Pennsylvania.

4. Starwood provides its employees at Pocono Stream with an Associate Handbook.

5. Vazquez acknowledged receipt of the Associate Handbook on June 17, 2003.

6. The Associate Handbook contains an appearance policy.

7. The appearance policy states:

   All Starwood Associates are expected to take pride and care in their personal appearance, dress and grooming. This is essential for presenting a professional image at all times.

   In this connection, Starwood has established a uniform and professional standard of appearance for all Associates in all Starwood locations. . . .

   *Hair should be conservative in style (and in color) and should not fall on the face or obstruct eye to eye contact. Hair may be required to be pulled back or tied back (or in the case of some food and beverage positions, a hair net or hat may be required).* Hats are not permitted unless they are part of an issued uniform. . . .

   Associates failing to adhere to proper Starwood standards with respect to appearance are subject to disciplinary action, up to and including termination of employment.

   (*Appearance Policy*, Ex. 4 (emphasis added).)

8. The appearance policy with regard to hair is written generally because it is a

judgment call made by individual managers to determine what they deem conservative as opposed to otherwise.

9. Managers at Paradise Stream worked with the human resources department and other managers to determine what standard would be applied to govern the appearance policy.

10. There was no written policy at Paradise Stream differentiating conservative hairstyles from those that were not considered conservative.

11. The appearance policy was interpreted to permit employees to wear braids that did not show an excessive amount of scalp. Thus, if braids were in the employee's hair, but an excessive amount of scalp was not visible, the hairstyle was acceptable under the appearance policy.

12. The appearance policy was interpreted to prohibit employees from having mohawks, cornrows that showed scalp, or shaved heads. A cornrow consists of hair tightly woven against the head, revealing scalp.

13. Employees that violated the appearance policy with regard to hair style were counseled by supervisors. Employees were not terminated immediately for violating the appearance standard.

14. Vazquez was counseled on multiple occasions for violating the appearance policy.

15. In 2004, Vazquez was disciplined for having her hair in twists that showed her scalp.

16. Vazquez was also disciplined on June 19, 2006 for violating the appearance policy.

17. The disciplinary notice issued to Vazquez on June 19, 2006 indicates that she violated company policy for having braids in her hair. As a result, Vazquez was sent home until she was able to speak with someone in the human resources department.

18. On September 27, 2006, Vazquez went to work with braids in her hair and she was told to wear a hat that day.

19. On October 3, 2006, Vazquez again went to work with braids in her hair and she was told by Jackie Manning ("Manning") to wear a hat.

20. On May 28, 2007, Vazquez went to work with braids in her hair.

21. Later that afternoon, Manning told Vazquez that she had to speak with Steve Almquist ("Almquist") in the office.

22. At that meeting, Vazquez told Almquist that she would not take the braids out of her hair.

23. Almquist gave Vazquez the option of removing the braids from hair or being terminated.

24. Vazquez refused to remove the braids. She was then terminated.

25. The Notice of Termination of Employment contains the following explanation for Vazqeuz's discharge from her employment: "Carmelita will not take out the braids in her hair." (*Notice of Termination*, Ex. 9.) The Notice of Termination does not indicate that excessive amount of Vazquez's scalp was visible on May 28, 2007.

26. Nancy Diaz ("Diaz") worked closely with Vazquez in housekeeping. Diaz never saw Vazquez wear her hair in cornrows.

27. Other employees at Paradise Stream were also counseled on the appearance policy.

28. Vazquez's daughter, Aesther Vazquez, worked at Paradise Stream for five years.

29. Like Vazquez, Aesther Vazquez is of African American and Hispanic descent.

30. On the two occasions Aesther Vazquez wore cornrows to work, Manning told her to take them off.

31. Aesther Vazquez complied and tied her hair back and put a garbage bag on her hair.

32. Aesther Vazquez was never sent home for wearing cornrows.

33. While Vazquez was employed at Paradise Stream, April Goode ("Goode") was permitted to wear her hair in cornrows and braids without being subject to discipline.

34. In late June 2007, the month after Vazquez was terminated from her employment with Starwood, Goode received two disciplinary notices for having an improper hair style. According to Goode, on both occasions her hair was in braids, not cornrows. She was sent home both times.

35. On July 2, 2007, Goode was terminated for wearing casual attire in violation of the appearance policy when she wore a scarf on her head to work.

36. Jenell Butz ("Butz") worked for Starwood from July 1999 through April 2010 in a variety of non-management and management positions.

37. In 2001, while she was employed as a non-management employee in the dining room, Butz and a co-worker wore their hair in cornrows to work. Both Butz and the co-worker are Caucasian.

38. They were both counseled about their hairstyle and told that they had to remove the cornrows. However, they were permitted to work the rest of the day.

39. Amanda Weir ("Weir"), a Caucasian employee, was permitted to wear a braided hairstyle with a ponytail which was not pulled tightly and revealed scalp.

40. Both Butz and Manning stated that they would not have counseled Weir on that hairstyle.

## Conclusions of Law

41. Under Title VII, "it shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

42. Because Vazquez offers only indirect evidence of race discrimination, her claim must proceed through the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Under the *McDonnell Douglas* burden-shifting procedure:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a *prima facie* case of discrimination. Second, if the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981) (quoting *McDonnell Douglas*, 411 U.S. at 802, 804, 93 S. Ct.

1817).

43. In order to establish a *prima facie* case of disparate treatment under Title VII, Vazquez must show that (1) she belongs to a protected class, (2) she was qualified for the position she sought to retain or attain, (3) she was subjected to an adverse employment action, and (4) the action occurred under circumstances giving rise to an inference that the adverse action was taken on account of her membership in the protected class. *See Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008); *see also Texas Dep't of Cmty. Affairs v. Burdline*, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981).

44. Vazquez established a *prima facie* case of discrimination at trial.  She is a member of a protected class, she was qualified to retain her position, she was terminated, and the adverse employment action occurred under circumstances giving rise to an inference of unlawful discrimination.  In particular, Vazquez was terminated for wearing braids, despite the testimony at trial that braids were not a violation of the appearance policy in the absence of an excessive amount of scalp being visible. Based on the testimony and exhibits at trial, Vazquez was not showing an excessive amount of scalp on the date of her termination.  Moreover, a Caucasian employee, Amanda Weir, was not counseled, suspended, or terminated for wearing braids, which were not pulled together tightly and revealed scalp.

45. In response to Vazquez's *prima facie* case of discrimination, Starwood adequately articulated a legitimate, non-discriminatory reason for its employment decision, namely that Vazquez was discharged for failing to comply with its business-related appearance policy.

46. As Starwood satisfied its burden, "the burden of production rebounds to [Vazquez], who must now show by a preponderance of the evidence that [Starwood's] explanation is pretextual (thus meeting [Vazquez's] burden of persuasion)." *Fuentes*, 32 F.3d at 763.

47. Vazquez proved at trial that Starwood's explanation for the adverse employment

action was pretextual.

48. Starwood's explanation that Vazquez was terminated for violating the appearance policy is not credible as its Notice of Termination provides that she was discharged because she would "not take out the braids in her hair." She was not terminated for wearing cornrows, and the Notice of Termination does not indicate that she was showing an excessive amount of scalp at the time of her termination. Furthermore, the testimony at trial was that braids did not violate the appearance policy unless an excessive amount of scalp was visible.

49. Vazquez also demonstrated at trial that her race/national origin was a determinative factor in the adverse employment decision, as Caucasian employees were not punished for wearing their hair in braids.

50. As a result, Starwood is liable on Vazquez's disparate treatment claim under Title VII.

51. Title VII of the Civil Rights Act of 1964 permits courts to grant equitable remedies such as back pay and front pay. *See* 42 U.S.C. § 2000e-5(g).

52. Because Vazquez failed to present evidence at trial to support these damage requests, she will not be awarded back pay or front pay.

53. Vazquez may also recover other damages in this case for intentional discrimination in employment as:

   In an action brought by a complaining party under section 706 or 717 of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000e-5 or 2000e-16] against a respondent who engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact) prohibited under section 703, 704, or 717 of the Act [42 U.S.C.A. §§ 2000e-2, 2000e-3, or 2000e-16], and provided that the complaining party cannot recover under section 1981 of this title, the complaining party may recover compensatory and punitive damages as allowed in subsection (b) of this section, in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964, from the respondent.

   42 U.S.C. § 1981a(a)(1).

54. Compensatory damages recoverable under § 1981a include "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." 42 U.S.C. § 1981a(b)(3). However,

"[c]ompensatory damages awarded under this section shall not include backpay, interest on backpay, or any other type of relief authorized under section 706(g) of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000e-5(g)]." *Id*. at § 1981a(b)(2).

55. Vazquez established by a preponderance of the evidence that she suffered inconvenience, lost future earnings, and other nonpecuniary losses as a product of intentional discrimination.

56. Starwood's unlawful termination of Vazquez damaged her future job prospects, prevented her from obtaining promotions to higher paying positions at Paradise Stream or other Starwood facilities, and caused her inconvenience associated with being unemployed and stigmatized for being terminated based on a purported failure to adhere to a policy of her former employer.

57. Therefore, the Court finds that Vazquez is entitled to twenty-five thousand dollars ($25,000.00) in compensatory damages.

58. Judgment will be entered in favor of Vazquez and against Starwood, improperly designated as Caesar's Paradise Stream Resort, in the amount of twenty-five thousand dollars ($25,000.00) on the claim for disparate treatment in violation of Title VII of the Civil Rights Act of 1964.

An appropriate order follows.

December 3, 2013    /s/ A. Richard Caputo
Date                A. Richard Caputo
                    United States District Judge